MARÍA VÁZQUEZ DE HERNÁNDEZ USERA, Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellant.

No. 240. Decided September 14, 1962.

14

*J. B. Fernández Badillo, Solicitor General,* and *Carlos G. Látimer, Assistant Solicitor General,* for appellant. *Jorge Luis Córdova Díaz* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

By deed No. 7 of April 27, 1943, executed before Notary Salvador Suau Carbonell, Encarnación Aboy widow of Cintrón, who at the time was sojourning in the city of New York, represented by her attorney in fact José Hernández Usera, simulated the conveyance of two real properties situated in Santurce in favor of José Luis Hernández Vázquez. Notwithstanding the fact that the full price set forth in that public document entitled "of sale" was $143,041, which the attorney in fact for the conveyor admittedly received prior to the execution, it is admitted that there was no valuable consideration in the contract. Two months later acquirer Hernández—by deed No. 12 of the following June 28 executed before the same notary—conveyed to his mother, María Vázquez Hernández Usera, the two real properties in question, also admitting that he received prior to the execution the price set forth in the contract, also entitled of sale. It is also admitted that there was no valuable consideration either in this conveyance. The parties admit that the two contracts were actually executed in order to conceal the gift of the real properties which the original owner, Encarnación Aboy widow of Cintrón, made in favor of her niece and godchild, María Vázquez Hernández Usera.[1]

---

[1] Apparently, in view of the absence from Puerto Rico of Mrs. Aboy and the necessity that her proxy Hernández Usera should appear to execute the deed in her behalf, and in view of the possibility that objection be raised to the registration of the document because the latter was the

█ It was further established that after the conveyance the appellee received the rent from the real properties, which she reported in her annual income-tax returns and paid the property taxes thereon.

Mrs. Aboy died on August 16, 1949 under an holographic will in which after providing for numerous legacies, she instituted the appellee sole and universal heir.[2] Notice of the death having been given for the purpose of the determination and liquidation of the inheritance tax, the Secretary of the Treasury included among the properties of the hereditary estate the two real properties object of the conveyances hereinabove described, alleging that they were simulated and therefore continued to form part of the estate left upon the death of the testatrix. He appraised them at $345,930 and notified a tax of $96,547.32 to the appellee on her hereditary share.

█ Judicial action was brought challenging this administrative determination, and after a trial on the merits the trial court sustained the complaint[3] after determining, as a question of fact, that the testatrix "performed an act of liberality and disposed gratuitously of the real properties in question in favor of the plaintiff, who accepted them."

The novel issues raised by the Secretary of the Treasury in this petition for review of the judgment adverse to him compel us to discuss, though briefly, the stimulating theory of the contractual simulation and its annex, the interposition of person in the contracts.

---

spouse of the donee, it was decided to carry out the transaction in the manner described. See § 1348 of the Civil Code, 1930 ed., 31 L.P.R.A. § 3773, and *Latallade* v. *Registrar*, 66 P.R.R. 646 (1946), in which it was held that an attorney in fact can not sell to his own wife property belonging to his principal because, since both are the beneficiaries of such acquisition, the prohibition contained in that section applies.

[2] *Wolff* v. *Hernández*, 76 P.R.R. 608 (1954), contains an exposition of this singular will, prolific in interesting litigations.

[3] At the time the deeds in question were executed, the existing law— § 1 of Act No. 99 of August 29, 1925 (Sess. Laws, p. 790), as amended by Act No. 72 of May 12, 1936 (Sess. Laws, p. 370)—did not tax gifts inter vivos.

■■■ 1. The concept of contractual relative simulation is stated in the provisions of § 1228 of the Civil Code, 1930 ed., 31 L.P.R.A. § 3433, which provides verbatim that "The statement of a false consideration in contracts shall render them void, unless it be proven that they were based on another real and licit one." Contrary to the case of the assumption of absolute simulation in which the parties seek the configuration of a feigned or nonexistent act,[4] in the relative modality the apparent transaction conceals a real transaction which the contracting parties wish to withdraw from the curiosity or indiscretion of third persons. That is why the feigned or simulated transaction requires the existence of a licit consideration.[5] The most frequent example of relative simulation is the case of the gift underlying a simulated contract of sale in which, although there is divergence between the appearance of the act and its real content, it is maintained on the basis of the real consideration which is none other than "the mere liberality of the benefactor," § 1226 of the Civil Code, 31 L.P.R.A. § 3431. In *García* v. *Central Alianza*, 69 P.R.R. 855 (1949); *Latorre* v. *Cruz*, 67 P.R.R. 696 (1947); *Heirs of Gómez* v. *Colón*, 63 P.R.R. 99 (1944); *Totti* v. *Fernández*, 40 P.R.R. 609 (1930); *Sosa* v. *Sosa*, 35 P.R.R. 939 (1926); *Cabanillas* v. *Cabanillas et al.*, 33 P.R.R. 739 (1924); *Ríos et al.* v. *Amorós et al.*, 27 P.R.R. 735 (1919); *Martínez* v. *Cerezo*, 25 P.R.R. 659 (1917);

---

[4] Almost always the purpose of the absolute simulation is to diminish the patrimony in order to take away properties from the action of the creditors or to increase the liabilities. The authors refer to specific cases of bankruptcy, with its inevitable serious economic consequences, and to the tax fraud. RODRÍGUEZ-ARIAS, *En Torno al Negocio Indirecto y Figuras Jurídicas Afines*, 185 Revista General de Legislación y Jurisprudencia 276, 285 (1949).

[5] When the consideration of the simulated contract is illicit, the contract is nonexistent and has no juridical effects. See Judgments of the Supreme Court of Spain of October 20, 1961 (XXVIII ARANZADI, *Repertorio de Jurisprudencia*, No. 3607; 45 Revista de Derecho Privado 1065); December 9, 1959 (XXVI ARANZADI, *op. cit.*, No. 4492; 44 Revista de Derecho Privado 121); October 7, 1958 (XXV ARANZADI, *op. cit.*, No. 3406, 43 Revista de Derecho Privado 44).

*Amy et al.* v. *Amy et al.*, 15 P.R.R. 387 (1909); *Altuna* v. *Ortiz et al.*, 11 P.R.R. 24 (1906), we have considered situations of contractual simulation. See in particular, *Guzmán* v. *Guzmán; Rodríguez, Int.*, 78 P.R.R. 640 (1955). See, also, VIII MANRESA, *Comentarios al Código Civil Español* 459-62 (5th ed. 1950); BORRELL Y SOLER, *Nulidad de los Actos Jurídicos Según el Código Civil Español* 81–87 (1947); TOMÁS PRESA, *La Simulación*, 157 *Revista General de Legislación y Jurisprudencia* 41 (1930); EVELIO VERDERA, *Algunos Aspectos de la Simulación*, 3 *Anuario de Derecho Civil* 22 *et seq.* (1950).

▇▇▇▇ The simulation may affect the nature, the content, or the subjects of the contract. For the purposes of the instant case, we are only interested in the simulation relating to the subjects of the contract and which is manifested by the interposition of a third person. Let FERRARA [6] fix the limits of this juridical figure:

"When executing a juridical business, it is proper to interpose a person who is a stranger for the purpose of concealing the real interested party. This person serves as an intermediary, as a link between those seeking the effects of a juridical act. The distinguishing characteristics are, in general: 1. To place himself between two persons who must be directly linked in the business, or between those with whom the patrimonial content of the business should remain definitively without the intermediary having a personal interest in the business. 2. His function of concealing the real owner of the business who prefers to remain behind the scenes."

The noted Italian jurist forthwith turns to consider the division of the persons interposed into two great categories, to wit: real persons interposed and simulated persons interposed. The former intervene in the contract "as actual contracting party—establishing the juridical relationship in their own name thereby becoming the owner of the rights

---

[6] FRANCISCO FERRARA, *La Simulación de los Negocios Jurídicos* (Ed. Revista de Derecho Privado 272 (1953)).

and obligations derived therefrom to immediately convey them back to the owner of the business who has kept apart from the latter"— (p. 273) ; the latter intervene "by mere appearance, as fictitious contracting party, when actually the relationship is established between the third person and the interested party who does not appear in the contract" (*id.*), and who is named, interchangeably, feigned intermediary, dummy, or name lender. (See, also, BONET RAMÓN, *Algunas Figuras Afines al Contrato de Mandato*, 184 *Revista General de Legislación y Jurisprudencia* 633, 648–51 (1948) ). And he adds:

"Pointing out briefly the concept of fictitious interposition, let us examine the requirements thereof. Only the juridical intervention of two persons is needed to set up the business: the real contracting parties, one of whom acts under an assumed name. The person interposed is a stranger to the relationship and disappears completely after the simulation is discovered. Such person lends at the most a mere material co-operation which may consist in the mere personal appearance as party to the contract for the purpose of perfecting the *mise en scene* and repeating mechanically the statement uttered in his ear. That is why the vices of consent, capacity, etc., must be considered with respect to the concealed contracting party and not with respect to the person interposed." (P. 281.)

It seems clear from the foregoing that the relationship is created directly between the visible contracting party and the concealed contracting party, whose patrimony receives the effects of the contract. The intermediary is a stranger to the bond created by virtue of the contractual relationship; hence, he will leave out of consideration his presence for the purposes of determining the juridical effects of the transaction.

Applying the foregoing principles to the situation at bar, it is clear that the lack of valuable consideration in the conveyances in question does not render the contract nonexistent because both are based on another licit and

real consideration—the act of liberality of the donor. And as respects the participation of José Luis Hernández, he should be considered as an intermediary used by the parties in order to carry out a licit purpose,[7] a mere name lender whose interposition disappears upon considering the transaction as a whole. This disposes of appellant's contention that what the evidence established at the most was the desire of Mrs. Aboy to donate the real properties to the appellee but not to the latter's son, and that since the first conveyance was made in favor of the latter, the first deed was absolutely void for complete lack of consideration and, hence, the conveyance to the appellee by the acquirer therein. We therefore hold that this is a concealed gift executed by means of two simulated contracts of sale.[8]

2. Lastly, the appellant argues that since the requirement that the gift be made in a public instrument (§ 575 of the Civil Code, 1930 ed., 31 L.P.R.A. § 2010) is not a mere formality but refers to the very existence of the act of liberality, from which the *animus donandi* and the acceptance by the donee should clearly appear (§ 571 of the Civil Code, 1930

---

[7] In the instant case we are not confronting a situation of the simulated sale executed solely for the purpose of defrauding the rights of other heirs to their legal portion, in which case the gift should be declared nonexistent because the consideration is illicit, since according to the statement of facts the appellee, whom we consider as the donee, was instituted as sole and universal heir in the will of the donor, who had no forced heirs. See Judgment of the Supreme Court of Spain of October 20, 1961 (XXVIII ARANZADI, *op. cit.*, No. 3607; 45 *Revista de Derecho Privado* 1065).

[8] The existing Inheritance Tax Act, No. 303 of April 12, 1946, provides in § 10(c), 13 L.P.R.A. § 891(c), that:

"(c) Every transfer by a person over 50 years of age, or within the two years preceding the death of the transferor, to his children, descendants, relatives, or other natural objects of his bounty, shall be presumed to be a gift, unless it is shown by the taxpayer that

"(1) The transfer was made for full and adequate consideration in money or money's worth, and

"(2) Said consideration was derived, directly or indirectly from income of the recipient or from property acquired prior to the approval of this section, or from a gift on which a tax was paid in accordance with sections 881–905 of this title, or from other lawful sources."

ed., 31 L.P.R.A. § 2006), "an instrument of simulated sale can hardly meet the requirements *sine qua non* necessary for the existence of a gift."

The Judgment of the Supreme Court of Spain of November 5, 1956 (XXIII ARANZADI, *op. cit.*, No. 4114, 40 *Revista de Derecho Privado* 1214), delivered by Mr. Justice Francisco Bonet Ramón, expounds the prevailing doctrine as follows: [9]

██ ██ "According to the judgment of March 3, 1932, although under § 1276 of the Civil Code there may be admitted the concealed businesses, namely, the valid and tacit acts concealed by apparent contracts but which have no specific consideration necessary for their existence, it is necessary in order that they produce full effects, to justify not only the concurrence of the indispensable personal elements of capacity and consent as well as the existence of the object of the obligatory or real relations actually agreed upon, but also the real and licit consideration on which the act which the parties have sought to conceal is based and *compliance with the formalities which the law would require of those who act openly. This is a strict doctrine* which must be especially applied, in accordance with the Spanish tradition, in the field of pure and simple gifts of real property, on the ground that the acts inter vivos reflect, more than an abstract and independent manner of conveying the property, a liberal act which attributes the ownership to the donee gratuitously. Since it amounts to a diminution, without correlative promise, of the donor's patrimony, and the en-

---

[9] In the same sense to the effect that whenever the contracts conceal hidden businesses bestowing a gift it is necessary to establish their existence as required by § 633 of the Spanish Civil Code, counterpart of § 575 of Puerto Rico, see the following recent Judgments of the Supreme Court of Spain:

October 20, 1961 (XXVIII ARANZADI, *op. cit.*, No. 3607; 45 *Revista de Derecho Privado* 1065).

December 19, 1960, 45 *Revista de Derecho Privado* 145.

December 9, 1959 (XXVI ARANZADI, *op. cit.*, No. 4492; 44 *Revista de Derecho Privado* 121).

October 19, 1959 (XXVI ARANZADI, *op. cit.*, No. 4872; 44 *Revista de Derecho Privado* 299).

October 7, 1958 (XXV ARANZADI, *op. cit.*, No. 3406; 43 *Revista de Derecho Privado* 44).

October 5, 1957 (62 *Jurisprudencia Civil* 780 (3d series); 42 *Revista de Derecho Privado* 47).

richment of the beneficiary, without encumbrance, it requires requisites and solemnities which protect the transferor against his disorderly impulses, and his spouse, heirs, and creditors against injury of the rights which the family economic system, the law of inheritance, or the patrimonial principle confer upon him. It also protects the donee against the risks of an acquisition in precarious appearance or at least deprived of the defenses which the reciprocal obligations and the formal acts bring into play. And in order that the gift of real property be valid, pursuant to § 633 of the Civil Code, it is necessary that it be set forth in a public instrument, specifying the properties donated and the value of the encumbrances which the donee must pay, and the acceptance thereof may be made in the same deed or in another separate deed. And although such precepts do not close the door to every gift intended to be made in a public instrument of sale, the interests mentioned hereinabove are not protected if the juridical elements which compose the concealed act, and particularly the meeting of the minds on gratuity, scope, and conditions of the conveyance, are not unquestionably and authentically emphasized."

 It is logical that if the performance of the formal requirements is necessary in the pure and simple gifts, it is more so in the concealed and simulated gifts which, because of their nature, it is not possible to be less demanding as to their formalities. After an elaborate exposition for the purpose of controverting the doctrine of the French authorities according to which the concealed gift may be made by dispensing with the formal requirements necessary for the direct gift, FERRARA, op. cit. at 235, concludes that "the simulated gift, not made in a public instrument, is void; however, if it was made in a public instrument, its validity can not be denied."

 Regarding the requirement of acceptance, it is stated in the Judgment of June 26, 1961 (XXVIII ARAN-ZADI, op. cit., No. 2745, 45 Revista de Derecho Privado 744), that "not only is the acceptance of the simulated contract, necessary, but also of the concealed contract, with all the extrinsic and formal requirements necessary for the validity

of the latter, *without requiring*, as is logical, *the categorical statement that the concealed contract which the contracting parties precisely intend to conceal is accepted*, and which would be exposed if the acceptance of the juridical reality were stated, it is evident that if it is accepted by the appellant (the donee) in written form and in the same instrument with the formula 'it agrees with the said acknowledgment of debt in the terms stated,' the gift should be regarded as perfected and made in writing and with the full knowledge of the executing parties that the juridical business was of the liberality of the donor, concealed in the form of a non-existing loan." It is likewise declared in the Judgment of November 16, 1956 (XXIII ARANZADI, *op. cit.*, No. 4115, 41 *Revista de Derecho Privado* 192) that the formal requirements in the case of a concealed gift are met "if the parties executed the business agreed upon in a public instrument and the acceptance of the feigned vendees and real donees is set forth as true by the use of that same verb in the instruments ..." The Judgment of January 29, 1945 (9 *Jur. Civ.* 291, 301 (2d series) ; 29 *Revista de Derecho Privado* 322), is worded in similar terms. LAURENT [10] says that in order that the concealed gift may be considered valid, the acceptance by the donee is necessary, "but without attributing to the word (acceptance) the special meaning which it conveys in the case of a solemn gift: it is a mere expression of will, governed by the general principles on consent. The evidence of the consent, *when there is a writing, shall appear from the signature of the donee ...*"

*Guzmán* v. *Guzmán, supra*, the facts of which are distinguishable from the instant case, ratifies the criterion on the necessity that the acceptance be stated in the manner required by law and that notice of such acceptance be given to the donor. The contract in that case was a contract of sale executed by a mother in favor of her two daughters, who

---

[10] XII *Derecho Civil Francés* 444–45 (1896).

appeared at the execution represented by a proxy. Subsequently one of the daughters ratified the appearance made in her name, but on that date the mother had been judicially declared incompetent. The sale for simulated consideration having been assailed successfully, we held that the contract of concealed gift could not be ratified either inasmuch as the acceptance was improper because (a) a verbal agent can not accept a gift of real property, and (b) the subsequent ratification did not convalidate the act because it was executed at a time when the donor was incompetent.

Summing up, therefore, all that is required in order that a concealed gift may comply with the legal formalities is that the simulated contract which conceals the gift be executed in a public instrument; that the donated properties be described separately, and in the case of the onerous gift, that the encumbrances assumed by the donee be set forth; and that the acceptance by the donee be stated in the same or in a separate instrument, which acceptance may be inferred from the signature in the simulated document.[11] All these requirements are met in this case.

In view of the foregoing, we conclude, as did the trial court, that the two real properties which were included by the Secretary of the Treasury for the purposes of liquidating the inheritance tax by reason of the death of Encarnación Aboy widow of Cintrón were not part of the latter's patrimony at the time of her death because they had been validly donated to the appellee in 1943.

The judgment rendered by the Superior Court, San Juan Part, on October 19, 1959, will be affirmed.

---

[11] *Santiago* v. *Rodríguez*, 72 P.R.R. 253, 261 (1951), is distinguishable from the case at bar, since it involved a simulated gift—which the donor afterwards assailed—of property belonging to the community partnership without the consent of one of the spouses.